J. W. THOMPSON, Appellee, v. O. E. GARRETT, JR., Appellant.

**CORPORATIONS:** **Transfer of Shares—Collateral Security—Construction of Contract.** A written contract for the assignment of corporate shares of stock as collateral security for a loan, and a written proxy to the assignee to vote the shares, justifying the construction that one of the ways of paying the loan would be by applying the stock dividends thereon, will be construed as a *security* for said loan, with the privilege of paying the loan otherwise than by applying stock dividends, and will not be construed in harmony with an inconsistent and contradictory plea by the assignee to the effect that, by virtue of a prior oral contract, the assignee was to be deemed the real owner until the dividends on the stock should be sufficient to pay the loan.

**Headnote 1:**   14 C. J. pp. 721, 732.

*Appeal from Linn District Court.*—ATHERTON B. CLARK, Judge.

MARCH 17, 1925.

REHEARING DENIED JUNE 25, 1925.

SUIT in equity, brought by a debtor against his creditor, to redeem and recover possession of certain corporation stock held by the creditor as security and to cancel and revoke the proxy held by such creditor. The defendant, as such creditor, pleaded that he was holding the corporation stock and the plaintiff's proxy pursuant to an agreement, partly in writing and partly oral, whereby such proxy became irrevocable until the happening of a contingency which will be referred to later. The trial court gave plaintiff decree as prayed. The defendant appeals.— *Affirmed.*

*Carl Jordan,* for appellant.

*Deacon, Sargent & Spangler* and *Carl Hendrickson,* for appellee.

EVANS, J.—The plaintiff and the defendant are stockholders

in a corporation known as the Cedar Rapids Paper Company. They mutually organized this corporation in April or May, 1922. For nearly a year prior to such date, they had been engaged in the same line of business as a partnership; and the corporation was organized to take over the business of such partnership and to open the way for additional capital. The partnership was operated upon a capital of $5,000. The most of this capital was actually furnished by the defendant. The plaintiff's contribution to such capital was represented by his promissory note, given to the defendant, for $2,500, on which note he subsequently paid the sum of $600. In the organization of the corporation the working capital was fixed at $10,000, all of which was to be furnished by the defendant, pursuant to a written agreement hereafter set forth. For the capital so furnished, the defendant took 56 shares of the stock, at the par value of $5,600. The plaintiff took 44 shares of the stock, at the par value of $4,400. The cash necessary for the purchase of the plaintiff's stock was furnished by the defendant, and the plaintiff executed and delivered to him his four interest-bearing promissory notes, aggregating $4,400. At about the same time, the following written agreement was entered into by the parties:

Exhibit No. 1 .
"Agreement For Loan and Terms of Payment
"It is hereby stipulated and agreed between O. E. Garrett, Jr., and J. W. Thompson, both of Cedar Rapids, Iowa, that the said O. E. Garrett, Jr., shall make a loan to J. W. Thompson upon the following terms and conditions, to wit:

"O. E. Garrett, Jr., is to loan to J. W. Thompson forty-four hundred dollars, which the said J. W. Thompson agrees to use in the purchase of common stock to the extent of forty-four shares in the Cedar Rapids Paper Co. Said shares are to be issued to J. W. Thompson.

"As security for said loan, the said J. W. Thompson hereby agrees to immediately assign said shares to O. E. Garrett, Jr., and O. E. Garrett, Jr., is to hold said shares *as security for said loan until said loan is paid.*

"It is understood and agreed that the said loan is to be evidenced by promissory notes, and it is understood and agreed

that the said J. W. Thompson *has the privilege of paying up said loan at any time,* but it is also understood and agreed that the collateral to secure said loan, to wit, the stock in the Cedar Rapids Paper Co., is to be accompanied by the proxy of J. W. Thompson to O. E. Garrett, Jr., entitling O. E. Garrett, Jr., to vote said stock in all meetings of the Cedar Rapids Paper Co. It is understood and agreed as part of the consideration for this loan, that the aforesaid proxy shall not be revoked by O. E. Garrett, Jr., his heirs or assigns until such a time as the earnings upon said stock shall have equaled the amount of the loan herein provided for. It is the intention of the parties by this agreement to provide that the said O. E. Garrett, Jr., is to be entitled to vote said shares of stock and to hold them *as security for this agreement* and to provide that the right to vote the shares of stock so assigned, *shall continue even beyond the period when the amount of this loan may be repaid until such a time as the earnings on said stock shall have equaled the amount of this loan.*

"This agreement made and entered into this 6th day of July, 1922.

"O. E. Garrett, Jr.
"J. W. Thompson."

Pursuant to the foregoing agreement, the stock issued to the plaintiff was delivered to the defendant, together with plaintiff's "proxy," which contained the following provision:

"I hereby surrender to the said O. E. Garrett, Jr., the above rights and divest myself, my heirs and assigns from all rights to revoke this proxy until such a time as the earnings upon my stock originally taken in this corporation shall have equaled the amount of the loan provided for in an agreement for a loan and terms of payment entered into between O. E. Garrett, Jr., and myself on the 6th day of July, 1922, and evidenced by a writing of that date."

The foregoing proxy bore date in October, 1922.

On June 15, 1922, stock was sold and issued to two other parties, Cejka and Hahn. Each of them purchased and received 23 shares of stock, and paid $2,300 therefor. At a later time, the plaintiff, Thompson, acquired 11 additional shares of

stock. The final distribution of stock at the time this suit was commenced, in May, 1924, was as follows: Garrett, 56 shares; Thompson, 55 shares; Cejka, 23 shares; Hahn, 23 shares.

These four stockholders constituted the working force of the corporation. Garrett was in charge of the home office, and the other three were the traveling salesmen. The corporation was in operation for two years prior to the beginning of this suit. No dividend had been declared or earned, nor had the gains of the corporation kept pace with its expenditures and losses. The capital had become impaired to the amount of $3,000, which was about 20 per cent of the par value. Though no dividend had been declared, we infer from the record that the current expenditures of the corporation included the payment of salaries to the four stockholders.

The plaintiff sought to revoke his proxy, and for that purpose tendered payment of his notes. The defendant denied the right of the plaintiff to thus release his shares of stock from the operation of the proxy. Hence this suit.

The defendant predicates his defense upon an alleged prior oral agreement and understanding, pursuant to which the written agreement above set forth was entered into. The claim is that only a part of such oral agreement and understanding was included in the written agreement; that the oral understanding was that the defendant should be the real owner of the full 100 shares of stock which his money paid for; that an inducement should be furnished to the plaintiff to work for the success of the company, in that he should become entitled to 44 shares as soon as the earned dividends of the corporation were sufficient to pay the defendant for such stock; that the promissory notes were taken from the plaintiff largely as a matter of form, and as an evidence that $4,400 would be due the defendant out of the dividends; that, until the amount of such notes should be thus paid out of such dividends, the defendant was to continue in the ownership of such stock, and was to control and vote the same; that the execution of the proxy was intended to carry out this purpose.

The *argument* for defendant is that ''his money'' paid for the stock, and that therefore it equitably belonged to him; that, though the title was held in the name of the plaintiff, yet it was

so held in the nature of a trust; and that the equitable owner-
ship of the defendant was subject only to the future contin-
gency that the defendant should be reimbursed for such stock
out of earned dividends. In so far as the defendant relies upon
the terms of the written agreement, such reliance is predicated
upon the last paragraph thereof, which we have italicized above.

The position of defendant thus outlined involves not only
some conflict with the written agreement actually executed, but
also some inconsistency with itself.

The written agreement seems to imply a mutual expectation
that the dividends of the corporation would pay the notes be-
fore they became due. Their due dates do not appear in the
record. It does appear, however, that they bore interest, and
that each note was an absolute promise to pay, and was drawn
in the ordinary form of a promissory note. If the agreement
was as contended for by the defendant, there was no occasion
for the promissory notes at all; for they had no function to
serve. When the plaintiff tendered to the defendant full pay-
ment of the notes, with accrued interest, and demanded the re-
turn of his proxy, the defendant was put to a test which he
failed to meet. If the defendant was the real equitable owner
of the stock, and if the real purpose of the proxy was only to
recognize that fact, then consistency required, not only that the
defendant should so assert, but also that he should renounce all
claim against the plaintiff upon his notes, and should tender a
return of the same. Such a course would at least have rendered
him consistent in his attitude.

The notes are valid on their face. They purport to be for a
consideration. The written agreement discloses a full considera-
tion. Whether plaintiff *borrowed the money* from the defendant
with which to buy the stock, or whether he should be deemed to
have *purchased the stock* from the defendant, is quite immate-
rial. Either hypothesis furnishes a full consideration for the
notes. The defendant's position amounts to a repudiation of
the notes, as being nugatory. He cannot both repudiate them
and yet hold them as the obligations of the plaintiff.

It must further be said that the oral agreement or under-
standing contended for by the defendant is essentially contra-
dictory to the written instruments executed by the parties. The

primary written agreement expressly provides that the defendant "is to hold said shares as security for said loan until said loan is paid." It also provides that the plaintiff is to assign said shares to the defendant "as security for said loan." The instrument as a whole is capable of a construction wholly consistent with the foregoing provisions. The contention of the defendant is wholly inconsistent with such provisions. The fact that the parties mutually expected the dividends to anticipate the maturity of the notes is not inconsistent with any provision of the contract. That great expectation, however, has faded away. The experience of the first two years gives no promise that it will ever be realized. Notwithstanding this, the plaintiff is liable upon his notes. According to defendant's theory, he may withhold from plaintiff forever the control of his stock, notwithstanding the payment of his notes, provided only that, as holder of a controlling interest, he may so manage the corporation that the dividends will never pay for the shares.

We construe the written instruments to mean that the defendant holds the 44 shares and the proxy of the plaintiff "as security for said loan," and that the payment of the loan necessarily discharges the collateral. Such was the finding of the trial court, and its decree is, accordingly, affirmed.—*Affirmed.*

FAVILLE, C. J., and ARTHUR and ALBERT, JJ., concur.